321 Ga. 845
FINAL COPY

S25Y0715. IN THE MATTER OF JOHNBULL OKECHUKWU NWOSU.

PER CURIAM.

This disciplinary matter is before the Court on the report and recommendation of the State Disciplinary Review Board ("Review Board"), which reviewed the report and recommendation of Special Master Paul Wain Painter III at the request of Johnbull Okechukwu Nwosu (State Bar No. 184284), pursuant to Bar Rules 4-214, 4-215, and 4-216. The formal complaint upon which this disciplinary proceeding was based alleged that Nwosu, who has been a member of the State Bar since 2014, violated Rules 3.3 (a) (1), 3.3 (a) (4), 3.4 (a), 4.1 (a), 4.1 (b), 8.4 (a) (1), and 8.4 (a) (4) of the Georgia Rules of Professional Conduct ("GRPC" or "Rules") found in Bar Rule 4-102 (d). The maximum penalty for a violation of Rule 8.4 (a) (1) is the maximum penalty for the specific Rule violated, and the maximum penalty for all the remaining Rules listed is disbarment. Following an evidentiary hearing, the Special Master determined that Nwosu

violated the Rules with which he was charged and, after thoroughly analyzing Nwosu's conduct under the framework found in the American Bar Association Standards for Imposing Lawyer Sanctions (1992) ("ABA Standards"), recommended that he be disbarred. Upon its review, however, the Review Board concluded that the Special Master's analysis of the ABA Standards was incomplete — particularly as it pertained to the applicable aggravating and mitigating factors — and recommended that the case be remanded back to the Special Master for a more complete analysis. After consideration of the entire record in this matter, we conclude that the Special Master's analysis of the ABA Standards is not incomplete, and we agree with the Special Master that Nwosu's conduct violated the above-mentioned Rules and that disbarment is the appropriate sanction for these violations.

1. *Procedural History*

In August 2023, the State Bar filed a formal complaint charging Nwosu with violations of Rules 3.3 (a) (1) (a lawyer shall not knowingly make a false statement of material fact or law to a

tribunal); 3.3 (a) (4) (a lawyer shall not knowingly offer evidence that the lawyer knows to be false); 3.4 (a) (a lawyer shall not unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value); 4.1 (a) (a lawyer shall not knowingly make a false statement of material fact or law to a third person in the course of representing a client); 4.1 (b) (a lawyer shall not knowingly fail to disclose a material fact to a third person when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client); 8.4 (a) (1) (a lawyer shall not violate or knowingly attempt to violate a Rule, knowingly assist or induce another to do so, or do so through the acts of another); and 8.4 (a) (4) (a lawyer shall not engage in professional conduct involving dishonesty, fraud, deceit, or misrepresentation). Nwosu acknowledged service of the complaint and filed his answer, in which he admitted some of the State Bar's factual allegations but denied all Rule violations. After an evidentiary hearing, the Special Master filed his report and recommendation.

## 2. *Special Master's Report and Recommendation*

### (a) *Factual Findings*

In his report and recommendation, the Special Master recounted that in September 2021, Nwosu filed a complaint on behalf of his clients, asserting a claim for breach of contract related to a business dispute. Nwosu attached the alleged contract to the complaint as Exhibit A. No date was included on the original contract, but Nwosu hand-labeled the document attached to the complaint as "Plaintiff Exhibit A. Agreement between [the parties] on March 26, 2016." Nwosu also handwrote the date "March 26, 2016" in an additional place toward the top of the document.

The defendants in the suit filed a motion to dismiss on various grounds, including the statute of limitations. In response, Nwosu filed a "Motion Opposing Defendant's Motion to Dismiss," and subsequently filed an amended motion with an attached copy of the alleged contract. This copy of the contract contained different handwritten alterations, including a different date than that which had been written on the copy submitted with the complaint. On this

4

copy of the contract, Nwosu wrote, "Plaintiff Exhibit 'E'" and, separately, "5/12/2019."

On August 1, 2022, the trial court held a hearing on the defendant's motion to dismiss. During the hearing, Nwosu told the trial court that the contract dated May 12, 2019, "was completed by the [opposing party] in his own handwriting, his name." More than halfway through the hearing, the trial court judge's staff attorney alerted the judge to the date discrepancy between the two versions of the contract that had been submitted to the court. The judge questioned Nwosu about the matter. Nwosu initially did not answer the judge's questions, but eventually admitted that he had initially written the date "March 26, 2016" on the exhibit and then altered the date to "May 12, 2019." On August 8, 2022, the trial court granted the defendant's motion to dismiss, and subsequently, Nwosu filed a "Motion [for] New Trial and/or in the Alternative Judgment Notwithstanding the Judgment." The defendant responded in opposition and filed a motion seeking attorney fees.

5

The trial court held another hearing on these motions, during which Nwosu again admitted that he made the alterations. The trial court summarily denied Nwosu's motion and granted the defendant's motion for attorney fees on the basis that "Plaintiffs filed the case outside of the statute of limitations and when Defense Counsel brought up the statute of limitations issue . . . , Plaintiffs tried to mislead the [c]ourt and file[d] [a brief] with the same exhibit but with a different 'contract date.'"

The Special Master further recounted that, at the evidentiary hearing in the disciplinary matter, Nwosu admitted to twice altering the document by adding different dates on the undated contract and filing these altered documents with the trial court but asserted that he did so to aid the court by showing the date that his client told him the contract was executed. Nwosu further asserted that he did not know that he could not alter the document and that his actions were due to ignorance and negligence because this was his first commercial dispute and he was unfamiliar with the practice of submitting exhibits.

However, in his factual findings, the Special Master rejected Nwosu's claims that he was unaware he could not alter the documents and that his actions were due to ignorance and negligence, concluding that Nwosu intended to mislead the court to help his client's case. Specifically, the Special Master explained that when asked during the evidentiary hearing whether he believed that Nwosu's actions were negligent, the trial court judge testified, "No. In fact, it was the exact opposite," and that Nwosu's actions were "intentional, not negligent."[1] Further, the Special Master noted that the record was replete with evidence that Nwosu altered the documents to intentionally deceive the trial court, as Nwosu testified at the evidentiary hearing that he "d[id]n't know why [he] wrote [the date] twice" on the version of the contract submitted with the complaint, if the purpose of writing the date was merely to label the exhibit. The Special Master also noted that Nwosu initially had

---

[1] The Special Master noted that, on cross-examination, the trial court judge clarified that he was saying that Nwosu had acted intentionally, not that Nwosu had intended to mislead the trial court, something the judge said was up to the Special Master to determine.

told the trial court that the contract dated May 12, 2019, was completed by the opposing party in his own handwriting. Moreover, Nwosu had multiple opportunities to inform the trial court and opposing counsel that he added the date to the undated contract, but failed to do so. Additionally, the Special Master found that Nwosu is a competent courtroom lawyer who has worked with exhibits for over 30 years[2] and would have known that altering evidence before filing it with the court is improper. Thus, based on the record, the Special Master found that Nwosu "knowingly, willingly, and intentionally filed the twice-altered [c]ontract to deceive the court and gain favor for his client's case."

(b) *Rule Violations*

Based on these factual findings, the Special Master concluded that Nwosu violated the provisions of the GRPC with which he was charged. Specifically, the Special Master determined that Nwosu violated Rules 3.3 and 4.1 by altering the undated contracts and

---

[2] The Special Master noted that before becoming a lawyer, Nwosu worked as an investigator for the Division of Family and Children Services for several years, involving frequent Juvenile Court appearances.

filing the contracts as exhibits with the court. In concluding that Nwosu violated Rules 3.3 and 4.1, the Special Master rejected Nwosu's argument that the term "knowingly" as used in these Rules required the Special Master to find that Nwosu's actions were done with the intention to mislead the trial court. The Special Master explained that "'knowingly' should be interpreted to require only actual knowledge of the fact in question" and, in this instance, required only that the State Bar prove that Nwosu "had actual knowledge that he filed altered evidence." Among other things, the Special Master concluded that Nwosu violated Rule 3.4 by unlawfully altering a document having potential evidentiary value in violation of OCGA § 16-10-20 (making it unlawful for a person to knowingly and willfully make or use a false writing or document in any matter within the jurisdiction of any department or agency of state or local government). Further, the Special Master impliedly found that Nwosu violated Rule 8.4 (a) (1) by finding that he violated several other Rules, and Rule 8.4 (a) (4) by finding that he engaged in deceit and misrepresentation.

(c) *ABA Standards*

After concluding that Nwosu violated the provisions of the GRPC with which he was charged, the Special Master applied the framework set out in the ABA Standards, which provide that, when imposing a sanction, "a court should consider the following factors: (a) the duty violated; (b) the lawyer's mental state; (c) the potential or actual injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors." ABA Standard 3.0. In assessing the duty violated, the Special Master found that Nwosu violated "one of the most sacrosanct duties beholden to an attorney," explaining that "[a]ttorneys who knowingly offer false evidence in a court of law have engaged not only in the worst kind of professional misconduct but also in conduct that severely undermines the public's confidence in our profession." *In the Matter of Manning-Wallace*, 287 Ga. 223, 229 (4) (695 SE2d 237) (2010) (Nahmias, J., concurring). In assessing Nwosu's mental state, the Special Master found that Nwosu acted with the intent to deceive the court, while noting that Nwosu faced pressure from his client during the course

of the representation that amounted to "an unusual amount of stress." In assessing the harm caused, the Special Master found that Nwosu's actions undermined the integrity of the profession and judicial system and, if left undetected, threatened a judgment based in deception and fraud against an unwitting citizen.

Turning to the existence of aggravating and mitigating factors, the Special Master found in aggravation that Nwosu acted with a dishonest motive to obtain a positive result for his client. See ABA Standard 9.22 (b). The Special Master found in mitigation that Nwosu acted without a selfish motive, see ABA Standard 9.32 (b), explaining that because Nwosu "was working on a flat fee, . . . the result [of his client's case] would not have benefited [Nwosu] directly." The Special Master also found that Nwosu provided strong evidence of his good character and reputation, see ABA Standard 9.32 (g), as the testimony at the evidentiary hearing from the then-Chief Judge of the Cobb Judicial Circuit "paint[ed] [Nwosu] as an attorney trusted and respected by both the bench and the bar, and valued by his clients," and an attorney character witness described

11

Nwosu as "a leader who gives his time and money to issues important to the community."

(d) *Recommended Discipline*

In assessing the appropriate discipline, the Special Master noted that this Court has been clear and consistent in its sanctions for this type of conduct, explaining that "disbarment is the appropriate sanction where a lawyer, with the intent to deceive and to harm another party, falsifies documents and relies upon those documents in a court proceeding." *In the Matter of Dogan*, 282 Ga. 783, 783-784 (653 SE2d 690) (2007). See also *In the Matter of Koehler*, 297 Ga. 794 (778 SE2d 218) (2015) (disbarment appropriate where lawyer made materially deceitful and misleading statements in court filings); *In the Matter of Jones-Lewis*, 295 Ga. 861 (764 SE2d 549) (2014) (disbarment appropriate where lawyer made false statements to court); *In the Matter of Minsk*, 296 Ga. 152 (765 SE2d 361) (2014) (disbarment appropriate where lawyer had pattern of making knowingly false statements to his client, the court, and third parties); *In the Matter of Manning-Wallace*, 291 Ga. 96 (727 SE2d

12

502) (2012) (disbarment appropriate where lawyer offered into evidence forged documents that she created or caused to be created and made material false statements regarding the same to the court). Therefore, the Special Master recommended that Nwosu be disbarred.

3. *Review Board's Report and Recommendation*

At Nwosu's request, the Review Board reviewed the Special Master's report and recommendation and suggested that the Special Master's analysis of the ABA Standards was incomplete, specifically as it pertained to the aggravating and mitigating factors, because it was unclear from the report whether the Special Master considered all of the aggravating and mitigating factors listed in ABA Standards 9.22 and 9.32. The Review Board recommended that the case be remanded back to the Special Master for a more complete analysis and explicitly stated that it was not providing any analysis as to the Special Master's findings of fact, conclusions of law regarding the Rules violated, or disbarment recommendation.

4. *The Parties' Arguments*

Both the State Bar and Nwosu filed exceptions in this Court to the Review Board's report and recommendation. The State Bar argues that the Special Master followed the correct framework for determining the appropriate sanction and that disbarment is appropriate. In response, Nwosu argues that the Special Master's analysis under the ABA Standards is incomplete, as the record showed that at least four other mitigating factors should apply: the absence of a prior disciplinary record; full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings; inexperience in the practice of law; and remorse. See ABA Standard 9.32 (a), (e), (f), and (l). In his exceptions to the Review Board's report and recommendation, Nwosu argues that the Review Board failed to correct several aspects of the Special Master's report and recommendation, contending that the Special Master erred in his interpretation of the mental state required for each of the Rule violations alleged, in finding that he acted with an intent to deceive, and in recommending disbarment as the

appropriate sanction. Nwosu asks this Court to dismiss the Bar's complaint, enter an appropriate sanction, or remand to the Special Master "after reversing his conclusions regarding [Nwosu]'s mental state and [the] appropriate sanction." Nwosu argues that his conduct "more appropriately calls for a reprimand[.]" In response, the State Bar argues that "[t]he relevant issue regarding intent is whether [Nwosu] intended for the [c]ourt to accept the altered contracts as original, unaltered contracts that negated the statute of limitations defense with their altered dates" and that the Special Master properly found that Nwosu acted with intent to deceive and mislead the court.

5. *Analysis*

We agree with the State Bar that the Special Master applied the correct framework for determining the appropriate sanction by analyzing Nwosu's conduct under the ABA Standards. Further, upon review of the record, we agree with the Special Master that Nwosu's conduct violated the provisions of the GRPC with which he was charged and that disbarment is the appropriate sanction. We

15

have explained that although the framework in the ABA Standards is "generally instructive as to the question of punishment, [the Standards] are not controlling." *In the Matter of Cook*, 311 Ga. 206, 213 (3) (a) (857 SE2d 212) (2021) (citation omitted). We have remanded a disciplinary matter in the past because the special master failed to make particular findings under the ABA Standards such that we were unable to determine the proper sanction to impose. See *In the Matter of Breault*, 318 Ga. 127, 141 (5) (897 SE2d 385) (2024). But a special master's failure to address expressly each individual aggravating and mitigating factor listed in ABA Standards 9.22 and 9.32 does not require a remand, particularly where the special master's factual findings are sufficient for us to make conclusions of law regarding the applicable aggravating and mitigating factors and the record is sufficient for us to determine the appropriate sanction. See *In the Matter of Melnick*, 319 Ga. 730, 738 (5) (905 SE2d 645) (2024) ("[W]hether the facts constitute an aggravating or mitigating factor is a matter we consider de novo."); *In the Matter of Braziel*, 318 Ga. 389, 391-392 (898 SE2d 458) (2024)

16

(determining that special master's finding that attorney "has been cooperative" could be considered in mitigation and agreeing with the Special Master that prior disciplinary history "is an aggravating factor").

Here, the Special Master adequately analyzed Nwosu's conduct under the framework found in the ABA Standards and made factual findings regarding the duty Nwosu violated, his mental state, the injury caused by his conduct, and the existence of aggravating and mitigating factors, as instructed by ABA Standard 3.0. Specifically, as for applicable mitigating factors, the Special Master found that Nwosu acted without a selfish motive and had a good character and a good reputation. The Special Master appears to have considered Nwosu's lack of disciplinary history in recommending disbarment, saying he was "not aware of a matter where the Court lessened a sanction for action[s] like the ones committed by [Nwosu] based on only reputation, character, and lack of prior disciplinary history[.]" And, based on the Special Master's factual findings, we reject Nwosu's assertion that his inexperience in the practice of law should

be considered in mitigation, as the Special Master explicitly found that Nwosu was a competent courtroom attorney and that he had over 30 years of experience in working with exhibits (albeit much of that time as a non-lawyer). We also view as unpersuasive Nwosu's assertions that this Court should consider in mitigation his full and free disclosure to the disciplinary board and his remorse, as the Special Master explicitly found that Nwosu was unable to explain at the evidentiary hearing why he altered the contract attached to the complaint in two different places and found his claims that he was unfamiliar with submitting exhibits and unaware that a document could not be altered before submitting it to the court were untruthful. See *Manning-Wallace*, 287 Ga. at 226-227 (3) (Nahmias, J., concurring) (noting that it was "odd" for State Bar to credit "cooperation" of attorney who made additional false statements to the Bar rather than "coming clean" at the outset of disciplinary proceedings).

But even considering in mitigation Nwosu's lack of prior disciplinary history, we conclude that disbarment is appropriate

18

given Nwosu's dishonesty, fraud, and deceit in twice submitting to the court altered evidence in the underlying proceeding. See *In the Matter of David-Vega*, 318 Ga. 600 (899 SE2d 126) (2024) (disbarring attorney who provided untruthful discovery responses in malpractice case brought against her and submitted fabricated evidence in the disciplinary proceeding, where attorney had no prior disciplinary history, expressed remorse for her actions, was suffering from personal and emotional problems, and had a good reputation and character); *In the Matter of Koehler*, 297 Ga. at 796 (disbarring attorney who made materially deceitful and misleading statements in court filings despite the attorney's lack of a prior disciplinary record). See also *In the Matter of Nicholson*, 299 Ga. 737, 741 (791 SE2d 776) (2016) ("Dishonesty in the practice of law and to the injury of another is a sufficient basis for disbarment."). Nwosu's request for a reprimand is premised on his insistence that he did not try to deceive anyone, but the Special Master explicitly found otherwise, and this factual finding is supported by the record.

Moreover, we reject Nwosu's arguments that the Special Master erred in his interpretation of the mental state required for each of the Rule violations alleged. As for Rules 3.3 and 4.1, Nwosu continues to argue that the word "knowingly" in these Rules implies "an intent element" and that the Special Master erroneously concluded that these Rules do not require the State Bar to show that Nwosu intended to deceive and mislead the court. However, Bar Rule 1.0 (o) defines "knowingly" as "denot[ing] actual knowledge of the fact in question," such that, to prove the Rule 3.3 violations charged, the State Bar was required to show merely that Nwosu *knowingly* made a false statement of material fact or law to the court and offered evidence he *knew* to be false. Further, to prove the Rule 4.1 violations charged, the State Bar was required to show that Nwosu *knowingly* made a false statement of material fact or law to a third person and *knowingly* failed to disclose a material fact to a third person when disclosure was necessary to avoid assisting a criminal or fraudulent act by his client. Therefore, we agree with the Special Master's interpretation that Rules 3.3 and 4.1 did not also

20

require the State Bar to prove that Nwosu intended to deceive or mislead the trial court — while recognizing that in many contexts an attorney's knowledge that he is making a false statement or presenting false evidence may itself, without more, give rise to a reasonable inference that the attorney intended to deceive or mislead.

As for Rules 3.4 and 8.4 (a) (4), Nwosu appears to argue that the Special Master erred in concluding that these Rules do not have "an intent element" and that the State Bar was not required to show that he acted with an intent to deceive the court to prove violations of these Rules. However, this argument misrepresents the Special Master's conclusions. As an initial matter, the Special Master concluded that Nwosu violated Rule 3.4 by, among other things, submitting altered evidence to a Georgia court in violation of OCGA § 16-10-20, noted that a violation of this statute can be proven by showing that the accused acted "knowingly and willfully," and determined that Nwosu's conduct was "willful and intentional," declining to credit Nwosu's explanations for his actions.

Additionally, the Special Master noted that a violation of Rule 8.4 (a) (4) does require an attorney to have engaged in conduct that constitutes "dishonesty, fraud, deceit or misrepresentation" and determined that Nwosu intended to deceive the trial court.

We also reject Nwosu's argument that the Special Master clearly erred in his factual finding that Nwosu intended to deceive others. After considering all of the evidence, the Special Master found that Nwosu acted with an intent to deceive and mislead the court based on his factual findings that Nwosu wrote a different date on the contract after opposing counsel raised the statute of limitations defense, and that Nwosu's assertions that he hand-wrote the dates in an attempt to aid the court and because he was not aware that this was prohibited were not credible. And we see no reason to disturb these findings. See *In the Matter of Eddings*, 314 Ga. 409, 416 (877 SE2d 248) (2022) ("[B]ecause this Court recognizes that the special master is in the best position to determine the witnesses' credibility, it generally defers to the factual findings and credibility determinations made by the special master unless those

findings or determinations are clearly erroneous."). Therefore, Nwosu's exceptions are without merit.

For these reasons, we conclude that disbarment is the appropriate sanction for Nwosu's conduct and is consistent with the sanction imposed in similar cases. Accordingly, it is hereby ordered that the name of Johnbull Okechukwu Nwosu be removed from the rolls of persons authorized to practice law in the State of Georgia. Nwosu is reminded of his duties under Bar Rule 4-219 (b).

*Disbarred. Peterson, C. J., Warren, P. J., and Bethel, Ellington, McMillian, LaGrua, Colvin, and Pinson, JJ., concur.*

Decided May 28, 2025 — Reconsideration denied June 24, 2025.

Disbarment.

*Russell D. Willard, General Counsel State Bar, William D. NeSmith III, Deputy General Counsel State Bar, William V. Hearnburg, Jr., Andreea N. Morrison, Assistant General Counsel State Bar*, for State Bar of Georgia.

*Akin & Tate, S. Lester Tate III; Bell Wilson Law, W. Matthew Wilson*, for Nwosu.